Stoet, Justice,
delivered the opinion of the court. — This cause was heard at the last term, and an order was then made, requiring the claimant to produce a copy of the libel, or other paper on which the sentence was founded, or to account for the non-production of such document ; and also requiring the production of further proof of the reality of the asserted sale of the Nereyda, and of the proprietary interest of the asserted owner. The cause has now been argued upon the further proof brought in by the parties, and stands for the judgment of the court.
^The Nereyda was a Spanish ship of war, and was captured by the privateer Irresistible, of which John D. Daniels was commander, and Henry Childs (the claimant), a lieutenant, under an asserted commission of the Oriental Republic of Rio de la Plata, and was carried into Margaritta, in Venezuela, and there condemned as prize to the captors, by the vice-admiralty court of that island. A sale is asserted to have been there made of her to the claimant, Francesche, after condemnation, for the sum of $30,000. She soon afterwards left Margaritta, under the command of Childs, who was the original prize-master, and arrived at Baltimore, the place of residence of Childs and Daniels, who are both American citizens ; and her subsequent history, after seizure and delivery upon stipulation or bail to the claimant, shows, that she has continued exclusively under the control, management and direction of the same persons.
The order to produce the libel, or to account for the omission, was made upon the fullest consideration by the court. Whoever sets up a title under a condemnation, is bound to show, that the court had jurisdiction of the cause ; and that the sentence has been rightly pronounced, upon the appli *74 cation of parties competent to ask it. For this purpose, it is necessary to show who are the captors, and how the court has acquired authority to decide the cause. In the ordinary cases of belligerent capture, no difficulty arises on this subject, for the courts of the captors have general jurisdiction Pr’ze> an<l their adjudication is conclusive *upon the proprietary interest. But where, as in the present case, the capture is made by captors acting under the commission of a foreign country, such capture gives them a right which no other nation, neutral to them, has authority to impugn, unless for the purpose of vindicating its own violated neutrality. The courts of another nation, whether an ally, or a co-belligerent only, can acquire no general right to entertain cognisance of the cause, unless by the assent, or upon the voluntary submission, of the captors. In such a case, it is peculiarly proper to show the jurisdiction of the court, by an exemplification of the proceedings anterior to the sentence of condemnation. And in all cases, it is the habit of courts of justice, to require the production of the libel, or other equivalent document, to verify the nature of the case, and ascertain the foundation of the claim of forfeiture as prize.
Notwithstanding the direct order for the production of the libel in this case, none has been produced ; nor has the slightest reason been given, to account for its non-production. The general usage of maritime nations, to proceed, in prize causes, to adjudication in this manner, either by a formal libel, or by some equivalent proceeding, is so notorious, that the omission of it is not to be presumed on the part of any civilized government, which professes to proceed upon the principles of international law. How, then, are we to account for the omission in this case ? If, by the course of proceeding in Venezuela, a libel does not constitute any part of the acts of its courts, cou^ easily shown. The neglect to show this, or in any manner to account for the non-production of the libel, if it exists, cannot but give láse to unfavorable susjficions as to the whole transaction. And where an order for further proof is made, and the party disobeys its injunctions, or neglects to comply with them, courts of prize are in the habit of considering such negligence as contumacy, leading to presumptions fatal to his claim. We think, in this case, that the non-production of the libel, under the circumstances, would justify the rejection of the claim of Francesche.
Upon the other point, as to the proprietary interest of Francesche, under the asserted sale, there is certainly very positive testimony of witnesses to the reality of the sale to him, and to his ability to make the purchase. And if this testimony stood alone, although it is certainly not, in all respects, consistent or harmonious, no difficulty would be felt, in allowing it entire judicial credence. But it is encountered by very strong circumstances on the other side ; and circumstances will sometimes outweigh the most positive testimony. It is remarkable, that from the institution of this cause up to the present time, a period of nearly four years, Francesche has not, by any personal act, made himself a party to. the cause. He has never made any affidavit of proprietary interest; he has never produced any document verified by his testimony ; he has never recognised the claim made in his behalf ; he has never, so far as we have any knowledge, advanced any money for the defence of it. Yet, the brig is admitted *to have been a valuable vessel, and was purchased, as is asserted, for the large sum *75 of $30,000. Upon an order of further proof, it is the usual, and almost invariable practice, for the claimant to make proofs, on his own oath, of his proprietary interest, and to give explanations of the nature, origin and character of his rights, and of the difficulties which surround them. This it is so much the habit of courts of prize to expect, that the very absence of such proofs always leads to considerable doubts. How are we to account for such utter indifference and negligence on the part of Franeesche, as to the fate of so valuable a property ? Is it consistent with the ordinary prudence which every man applies to the preservation of his own interest ? Can it be rationally explained, but upon the supposition, that his interest in this suit is nominal, and not real.
This is not all. Immediately after the ostensible sale to Franeesche, the Nereyda was put in command of Childs, an American citizen, who was an utter stranger to him, so far as we have any means of knowledge, and sailed for Baltimore, the home port of the Irresistible, and the domicil of Daniels and Childs. There is no evidence, that she has ever revisited Margaritta, and there is positive evidence, that she has, for the three last years, be in habits of intimacy with the ports of the United States. Where are the owner’s instructions, given to the master, on his departure to Baltimore ? Where is the documentary evidence of Francesche’s ownership ? Where are the proofs of his disbursements for the vessel, *during her subsequent voyages ? From the time of her voyage to Baltimore, she has remained under the management of Daniels or Childs, or some other apparent agent of Daniels. She has undergone extensive repairs, her rig has been altered, heavy expenses have been incurred, and a new master has been appointed to her. Under whose authority have all these acts been done ? Where are the orders of Franeesche for these acts ? Daniels has constantly been connected with the vessel; he has superintended her repairs ; he or his agents have paid the bills ; he is the reputed owner of the vessel; and he has been consulted as to the material operations. How can all these things be, and yet the real owner be a foreigner, a Venezuelian ? How can he be presumed to lie by, without any apparent interposition in the destiny of his own vessel.
There are some other extraordinary circumstances in the case. The Nereyda arrived at Margaritta, under the command of Childs, as prize-master ; and in a few days afterwards, Daniels arrived there with the Irresistible. The crew of the latter vessel ran away with her ; and Daniels then sailed in the Nereyda, in pursuit of the privateer, and of course, on a voyage for his own peculiar benefit. How is this reconcilable with the supposition of a real sale to Franeesche ? What interest had the latter in regaining the Irresistible, or subduing a revolted crew ? Why should his vessel, after .that object was accomplished, have gone to Baltimore ? Why should he intrust to strangers, for a voyage in which he had no apparent interest, *so valuable a property ? If he made any contract for that voyage, why is not that contract px-oduced ? These are questions which it seems very difficult to answer, in any manner useful to the asserted proprietary interests of Franeesche. Yet the facts, to which allusion is here made, are drawn from the further pi-oof of the claimant; and this further proof, it is not immaterial to observe, comes, not fi-om Margaritta, where Fi-ancesche resided, and for aught that appears, still resides ; but from Laguayra, with which he is not shown to have any immediate connection.
*76 Looking, therefore, to all the circumstances of the case, the fact of the unchanged possession of the captors, the habits of the vessel, the apparent control of the property by Daniels, the utter absence of all proper documentary proofs of ownership, instructions, disbursements, and even connection with her, on the part of the claimant, we think that there is the strongest reason to believe, that no real sale ever took place, and that the property remains still in the original captors, unaffected by the asserted transfer. The positive evidence is completely borne down by the strong and irresistible current of circumstantial evidence which opposes it. Upon both grounds, therefore, viz., the omission to produce the original libel, or account for its non-production, and the insufficiency of the proofs of proprietary interest, the court are of opinion, that the cause must be decided against the asserted claim.
Ifthis be so, then, as it is clear, that the original *outfit of the privateer Irresistible was illegal, upon the principles already established by this court, the property of the Uereyda remains in his majesty the King of Spain, and ought to be restored accordingly. The decree of the circuit court is, therefore, reversed, and the Uereyda is ordered to be restored to the libellant, with costs of suit.
Decree reversed.